1 Krista M. Carter (State Bar Number 225229)
carterk@docksteinshapiro.com
2 DICKSTEIN SHAPIRO LLP
1841 Page Mill Road, Suite 150
3 Palo Alto, CA 94304-1254
Telephone: 650.690.9500
4 Fax: 650.690.9501
5
Counsel for Plaintiff
6 TelMate, LLC, a Delaware Corporation
7

8 **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
9

10

11 TELMATE, LLC, a Delaware Corporation,      Civil Action No.:

Plaintiffs,
12      COMPLAINT FOR TRADEMARK
INFRINGEMENT, UNFAIR
13 v.      COMPETITION, AND FALSE
ADVERTISING
14 JAIL CALL SOLUTIONS LLC, d/b/a JAIL
CALL SERVICES, INC., a Texas Corporation,      JURY TRIAL DEMANDED
15 MARC GRISHAM, resident of Texas,
16 Defendant.
17

18 **COMPLAINT**

19      Plaintiff Telmate, LLC ("Telmate") by its attorneys, Dickstein Shapiro LLP, for its complaint

20 against defendants Jail Call Solutions, LLC d/b/a Jail Call Services, and Marc Grisham, alleges as

21 follows:

22 **NATURE OF THE ACTION**

23      1. This is a civil action for:

24          (a)     trademark infringement, unfair competition, false advertising and passing off

25                 under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the

26                 "Lanham Act"); and

27          (b)     unfair competition pursuant to California Business and Professions Code

28                 §§ 17200 et seq.

DICKSTEIN
SHAPIRO LLP

**THE PARTIES**

2.  Plaintiff Telmate, LLC is a limited liability company of the State of Delaware with a principal place of business in San Francisco, California. Telmate conducts business throughout the United States including within the State of California and within this district.

3.  Defendant Jail Call Solutions, LLC ("Jail Call Solutions") is a Texas limited liability company and maintains a principal place of business in Texas. Jail Call is doing business as Jail Call Services ("JCS"). Unless specified otherwise, Jail Call Solutions and JCS will be together referred to as Jail Call.

4.  Defendant Marc Grisham ("Grisham") is the owner, registered agent, president and managing member of Jail Call.

5.  Jail Call conducts business throughout the United States, including within the State of California and this district.

**JURISDICTION AND VENUE**

6.  The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1338. The amount in controversy, exclusive of costs and interests, exceeds Seventy-Five Thousand Dollars ($75,000.00). The Court has federal question jurisdiction over the subject matter of the claims in this action that relate to trademark infringement, unfair competition, false advertising and passing off pursuant to 15 U.S.C. §§ 1116(a) and 1121(a), as these claims arise under the laws of the United States. The Court also has jurisdiction over the claims which arise under California statutory law pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of common facts.

7.  This Court has personal jurisdiction over Jail Call because it engages in marketing and sales to customers around the country, including in California, and has engaged in conduct that was intended to and did result in harmful effects to Telmate in California.

8.  Venue is proper in this district under 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

9.  Telmate owns the marks TELMATE and GETTING OUT (collectively, the "Telmate

DICKSTEIN
SHAPIRO LLP

marks") and has used these marks in commerce, which lawfully may be regulated by Congress, at least as early as 2009 with regard to TELMATE.  Telmate began using the mark GETTING OUT in commerce at least as early as February 24, 2012.  Telmate uses these marks in connection with providing inmate telecom products, e.g., providing telecommunications services to correctional facilities and providing a website through which customers can manage account information related to such telecommunications services.  Since the above-referenced dates, Telmate has continuously used the Telmate marks in commerce and has prominently, exclusively, and extensively used, advertised, and promoted such marks on its websites www.telmate.com and www.gettingout.com, and in various promotional materials.

10. As a result of the continuous use and promotion of the Telmate marks by Telmate, these trademarks have become distinctive to designate Telmate and its services from the services of other businesses, and to distinguish Telmate as the source or origin of such services.

11. Telmate expended significant resources and investment to establish and build TELMATE and GETTING OUT as distinctive and well-known marks, particularly in the correctional facility industry.  As a result, the trade and the consuming public have come to associate these marks with the superior quality of the services offered by Telmate under the Telmate marks.

12. On April 20, 2011, Telmate applied for registration of the mark TELMATE for "Communication services, namely, transmission of voice, audio, visual images and data by telecommunications networks, wireless communication networks, the Internet, information services networks and data networks" with the United States Patent and Trademark Office ("USPTO").

13. The USPTO granted Telmate's registration for TELMATE on December 13, 2011, issuing Registration Number 4,070,189.  This registration was duly and legally issued, and is valid and subsisting.  A copy of this registration is attached as Exhibit A.

14. On November 3, 2010, Telmate applied for registration of the mark GETTING OUT for "Telecommunication services, namely, transmission of voice, data, graphics, images, audio and video by means of telecommunications networks, wireless communication networks, and the Internet" with the USPTO.

15. The USPTO granted Telmate's registration for GETTING OUT on February 5, 2013, issuing Registration Number 4,286,498. This registration was duly and legally issued, and is valid and subsisting. A copy of this registration is attached as Exhibit B.

16. Jail Call had no use of the TELMATE and GETTING OUT marks at the time Telmate applied to register the marks with the USPTO.

17. Jail Call had constructive notice of Telmate's trademark rights in its TELMATE and GETTING OUT marks as of at least September 27, 2011 and March 29, 2011, respectively. Upon information and belief, Jail Call also had actual notice and knowledge of Telmate's rights in the marks.

18. Upon information and belief, Jail Call had actual knowledge of the goodwill associated with Telmate's marks prior to the selection by Jail Call of the name and marks "telmate" and "getting out" as keywords for directing consumers to Jail Call's advertising and Jail Call's website, as explained in detail below.

19. Despite Jail Call's actual and constructive knowledge regarding Telmate's prior and superior rights in the Telmate marks, and without Telmate's authorization, Jail Call has infringed upon Telmate's rights to the Telmate marks.

20. Jail Call incorporated the Telmate marks in its advertising campaign. In this respect, Jail Call bought the Telmate marks, trade name, and the phrase "telmate" and "getting out" as keywords to divert users looking for Telmate to Jail Call. As of at least February 4, 2014, when a user of the Google search engine types "telmate" or "getting out" into the search field, in the Google Sponsored AdWords advertisements (at the top of the search page) is Jail Call's website as shown below:

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



///

21. Once a potential consumer clicked on one of the above links, which featured "Telmate" and "Gettingout.com" first in the advertisement, the potential consumer was directed to Jail Call's website.  Jail Call did nothing to inform the potential client that they have reached a company other than Telmate or not associated with Telmate or the Telmate marks.

22. Jail Call's activities are likely to cause confusion or mistake or to deceive consumers into believing that its website, products, and/or services are sponsored, licensed, affiliated, or associated with Telmate, or that Telmate's services are associated with Jail Call.

23. Consumers searching for Telmate's products and services were diverted to Jail Call's website through Jail Call's unauthorized use of the Telmate marks.  Therefore, Jail Call unfairly benefitted by having access to potential consumers through the goodwill created by the Telmate marks.

24. Jail Call's use of Telmate's marks has irreparably harmed the reputation of Telmate by diverting its customers, trading on the goodwill of Telmate and creating the false association between Jail Call's and Telmate's goods and services.

25. Grisham is the registered agent, president, managing member and owner of Jail Call. (Exhibit C)

DICKSTEIN
SHAPIRO LLP

26. Jail Call has an "F" rating (out of A+ to F range) by the BBB; 124 complaints filed against it through the BBB, 12 serious complaints, 32 unresolved complaints, and 27 to which the business did not respond.  The BBB also found issues with Jail Call's advertising and its failure to resolve underlying causes of a pattern of complaints. (Exhibit D)

27. Upon information and belief, Jail Call has engaged in a pattern of unauthorized use of third-party trademarks.  (*See Global Tel\*Link Corp. v. Jail Call Services, LLC*, Civil Action No. 1:13-cv-00075-LO-TCB (EDVA); Exhibit E (Securus – Jail Call AdWords Advertisement)).

28. Grisham also owns and operates JCS.  (Exhibit C)

29. JCS has an "F" rating (out of A+ to F range) by the Better Business Bureau ("BBB"); has a total of 240 closed complaints filed against it through the BBB; and 205 complaints where JCS did not respond to the BBB (Exhibit F).

30. Any perceived association between Telmate, the Telmate marks and Jail Call, JCS or Grisham has and will cause significant damage to Telmate's reputation and the goodwill associated with the Telmate marks and its goods and services.

31. On February 4, 2014, Telmate sent a letter to Jail Call demanding that it cease and desist from using the Telmate marks, and any other trademarks or trade names that belong to Telmate or its subsidiaries.  A copy of Telmate's February 4, 2014 letter is attached as Exhibit G.

32.  Grisham responded to Telmate's letter stating:

> Although the nature of our business is extremely dissimilar to that of your client, (we are simply a VoIP reseller), we have no continued interest *at this time*, *to continue reaching or serving our potential mutual customer base.*
>
> *Telmate's market share is far too small to justify the expense to solicit their customers for the savings our company provides*.  Should this change in the future, we will have our counsel contact you to resolve any potential conflict.

A copy of Grisham's response is attached as Exhibit H (emphasis added).

33. Unless enjoined by this Court, based upon Grisham's response and the pattern of reported business activities and disregard for third-party intellectual property, Grisham and Jail Call are highly likely to continue and/or resume to infringe Telmate's TELMATE and GETTING OUT

marks to promote their goods and services and improperly redirect, divert, mislead and deceive consumers for their own benefit, and at the detriment and harm to Telmate's business and goodwill associated with its Telmate marks and services.

## CAUSES OF ACTION

**Count I – Federal Trademark Infringement of**

**Reg. Nos. 4070189**

34. Telmate repeats and realleges the allegations contained in paragraphs 1 through 33.

35. The Telmate marks are valid and subsisting federally registered trademarks.  By virtue of these registrations, the Telmate marks are entitled to protection under the Trademark Act, 15 U.S.C. §§ 1051, et seq.

36. Defendants' use of the Telmate marks is likely to cause confusion, mistake, or deception as to the source or origin of Telmate's services in that customers and potential customers are likely to believe that the services provided by Defendants through its respective website or otherwise are provided by, sponsored by, licensed by, affiliated, or associated with, or in some other way legitimately connected to Telmate or its services under the Telmate marks.

37. Defendants' use of the Telmate marks in metatags, and in Google Sponsored AdWords was intentional and was for the purpose of misleading consumers and causing potential/existing customers of Telmate to be diverted to Defendants' website instead of Telmate affiliated websites.  These willful actions violate Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

38. As a result of Defendants' infringement, as described above, consumers are likely to be confused and deceived as to the source, sponsorship, affiliation or approval of Telmate's services, marketed under its protected trademarks, and Defendants' competing services.

39. Telmate has been damaged by these acts in an amount to be determined at trial.  Upon information and belief, Defendants' use of the Telmate marks as metatags and in Google Sponsored AdWords advertisements was undertaken by Defendants intentionally, maliciously, and in bad faith.  Therefore, Telmate is entitled to recover from Defendants, in addition to actual damages, punitive

DICKSTEIN
SHAPIRO LLP

damages and attorneys' fees.

40. Defendants' conduct, if it continues, will result in irreparable harm to Telmate and, specifically, to the goodwill associated with the Telmate marks, unless such conduct is enjoined.

**Count II – False Designation of Origin and Unfair Competition**

**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

41. Telmate repeats and realleges the allegations contained in paragraphs 1-40 above.

42. The acts of Defendants complained of herein constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43. Upon information and belief, Defendants have acted with the intention of causing confusion, mistake or deception, and of misappropriating the goodwill associated with the Telmate marks to profit thereby to the detriment of Telmate.

44. By reason of Defendants' unfair competition and/or inducement of others to compete unfairly, and/or continued unauthorized use of Telmate's trade names and marks in a manner to compete unfairly with Telmate, Telmate has suffered and will continue to suffer irreparable damage, including loss of control of its reputation, loss of trade and loss of goodwill. Unless Defendants are enjoined from continuing or resuming these wrongful acts, the damage to Telmate will increase and be substantial.

45. In addition to an injunction, Telmate is also entitled to profits, damages and costs from Defendants, as provided by law, including punitive damages and attorneys' fees, in an amount to be determined at trial.

**Count III – False Advertising Under Lanham Act**

46. Telmate repeats and realleges the allegations contained in paragraphs 1-45 above.

47. Defendants, by using the Telmate marks through its Google Sponsored AdWords advertising scheme, metatags and subdomains, is misleading, deceiving, and has the potential to mislead and deceive, consumers regarding the origin of its services.

48. Defendants' use of the Telmate marks not only relies entirely upon the goodwill of the Telmate marks and Telmate trade name to attract customers, but also is calculated to obscure Telmate's trademarks and the links to Telmate, and to divert potential customers to Defendants'

DICKSTEIN
SHAPIRO LLP

website.  By posting Defendants' competitive advertising prominently ahead of the search results sought by consumers, Defendants are obscuring information and misdirecting consumers to their websites, or to websites about Jail Call's products and services.

49. The use by Defendants of the Telmate marks and trade name as keywords for its Google Sponsored AdWords advertising and subdomains was done with full knowledge of Telmate's rights to its trade name and Telmate marks, and with the full intent of wrongfully diverting customers and potential customers away from Telmate.  In his response (Exhibit H), Grisham admits that these unauthorized activities were intentional.  *See* Exhibit H ("[w]e have no continued interest at this time, ***to continue reaching or serving our potential mutual customer base***").

50. Defendants' wrongful use of the Telmate marks in association with its website and through its advertising schemes are material and are likely to influence a consumer's purchasing decision by establishing a false association about the nature, quality or characteristics of Defendants' services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. Defendants caused their use of the Telmate marks to enter interstate commerce through use of their website.

52. Telmate has been damaged by these acts in an amount to be determined at trial, through direct diversion of sales, loss of control over reputation and by a lessening of the goodwill associated with the Telmate marks and its services.  Upon information and belief, Defendants' use of the Telmate marks as metatags, subdomains and in Google Sponsored AdWords was undertaken by Defendants intentionally, maliciously, and in bad faith.

**Count IV –Injunction Relief for Passing Off Pursuant**

**to Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a)**

53. Telmate repeats and realleges the allegations contained in paragraphs 1- 52 above.

54. This claim is for passing off pursuant to 15 U.S.C. § 1125(a).  This cause of action is separate and independent of the causes set forth in Claims I, II, and III, but is between the same parties and based on the same operative facts.

55. Telmate is actively engaged in exploiting and promoting its Telmate marks in

DICKSTEIN
SHAPIRO LLP

1 interstate commerce throughout the United States.

2  56. Upon information and belief, Defendants intended to pass off their products as those

3 of Telmate's products and services, and deliberately attempted to create the impression that their

4 products and services originated and/or are associated, sponsored or connected with Telmate's

5 services and products.

6  57. Defendants' intended wrongful use of Telmate's Telmate marks in connection with

7 their products and services did and would likely cause confusion as to the source of Defendants'

8 products and services by the purchasing public who associate such products and services with and

9 originating from a single source, all to the detriment of Telmate.

10  58. Telmate will not be able to police or control the quality of Defendants' products and

11 services, and such passing off has and will harm Telmate's consumer goodwill and reputation.

12  59. Defendants' conduct violates 15 U.S.C. § 1125(a).

13  60. Upon information and belief, Defendants conduct was willful, and caused Telmate

14 irreparable injury. There is a high likelihood that Defendants' intend to willfully pass off their

15 products for Telmate's Telmate and Getting Out services and products in the future, which will

16 cause additional irreparable injury to Telmate's goodwill and reputation.

17  61. Telmate has no adequate remedy at law.

18    **Count V – Unfair Competition Pursuant to**

19    **Cal. Bus. & Prof. Code §§ 17200 et seq.**

20  62. Telmate repeats and realleges the allegations contained in paragraphs 1- 61 above.

21  63. Defendants' conduct, as described above, constitutes unlawful, unfair, and

22 fraudulent business practices in violation of California Business and Professions Code §§ 17200 et

23 seq.

24  64. Telmate has been injured by Defendants acts of unfair competition. Telmate is

25 entitled to damages in an amount to be proven at trial. Telmate has suffered and will continue to

26 suffer irreparable damage, including loss of control of its reputation, loss of trade and loss of

27 goodwill. Unless Defendants are enjoined from continuing or resuming these wrongful acts, the

28 damage to Telmate will increase and be substantial.

DICKSTEIN
SHAPIRO LLP

**REQUEST FOR RELIEF**

65.   Plaintiff requests that the Court enter a judgment:

A.   Under 15 U.S.C. §§ 1116 and 1125, and Cal. Bus. & Prof. Code §§ 17203, permanently enjoining Defendants from:

      i.   Using the Telmate marks containing or consisting, in whole or in part, of the terms "TELMATE", "GETTING OUT" and any other mark confusingly similar to the Telmate marks, including, in advertising, offering for sale, and/or sale of products or services that may reasonably be encompassed by the Telmate marks or which may constitute a natural zone of expansion for Telmate, including but not limited to any  use in connection with correctional facility telephone services;

      ii.   Using any service mark, trademark, trade name, trade dress, word, domain name, number, abbreviation, design, color, arrangement, collocation, or any combination thereof, which would imitate, resemble, or suggest the Telmate marks;

      iii.   Otherwise infringing the Telmate marks;

      iv.   Unfairly competing with Telmate or otherwise injuring its business reputation in any manner;

      v.   Publishing any telephone, directory, or Internet listing using the Telmate marks and any other mark containing the terms "TELMATE," "GETTING OUT" and any other mark confusingly similar to the Telmate marks, in the advertising, offering for sale, and/or sale of goods or services that may reasonably be encompassed by the Telmate marks, or which may constitute a natural zone of expansion for Telmate;

      vi.   Using or registering any domain name which is confusingly similar to the Telmate marks in advertising, offering for sale, and/or sale of correctional facility telephone services, or any other goods or services that may reasonably be encompassed by the Telmate marks, or which may constitute a natural zone of expansion for Telmate;

B.   Under 15 U.S.C. § 1118, Defendants be directed to deliver up for destruction all goods, advertisements, labels, signs, prints, packages, wrappers, receptacles, computer memory, data, computer programs, software, or any other media, and all other materials in its

1   possession or under its control bearing the Telmate marks or any other mark containing the

2   term "TELMATE," "GETTING OUT" or any reproduction, counterfeit, copy or colorable

3   imitation of Telmate's goods, services or Telmate marks;

4   C.   Under 15 U.S.C. § 1117, Defendants account and pay to Telmate damages in an amount

5        sufficient to compensate it fairly for the injury it sustained, plus all profits that are

6        attributable to Defendants' sale of goods and services under the Telmate marks, and further

7        that the amount of the monetary award be trebled in view of the willful and deliberate nature

8        of Defendants' unlawful conduct;

9   D.   Under 15 U.S.C. § 1117, Jail Call be ordered to pay Telmate its attorneys' fees and costs; and

10  E.   Such other and further relief as this Court may deem just and proper.

11                          **<u>DEMAND FOR JURY TRIAL</u>**

12           Pursuant to Rule 38(b), Fed. R. Civ. P., plaintiff Telmate, LLC demand a trial by jury on

13  all issues triable of right by a jury.

14

15

16  DATED:  March 19, 2014                    DICKSTEIN SHAPIRO LLP

17

18                                           By: _____ /s/ *Krista M. Carter*_____
                                                 Krista M. Carter (State Bar No. 225229)
19                                               Attorney for Plaintiff

20

21

22

23

24

25

26

27

28